**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TV TOKYO CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25 C 246** |
| | ) | |
| **THE INDIVIDUALS, CORPORATIONS,** | ) | |
| **LIMITED LIABILITY COMPANIES,** | ) | |
| **PARTNERSHIPS AND** | ) | |
| **UNINCORPORATED ASSOCIATIONS** | ) | |
| **IDENTIFIED ON SCHEDULE A** | ) | |
| **HERETO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

TV Tokyo Corporation has sued a number of entities, all likely located outside the United States, alleging trademark infringement and counterfeiting in violation of the Lanham Act as well as copyright infringement. TV Tokyo alleges that all of these entities were offering and selling infringing items in the United States, including into this District, via e-commerce stores hosted on various platforms, including Aliexpress, Alibaba, Wish, and Shopify, among others.

On January 13, 2025, the Court issued an *ex parte* temporary restraining order (TRO) against the defendants and those acting for or in concert with them. The TRO barred the defendants and anyone acting in concert with them from (among other things) further infringement, including further sales and shipment of infringing items. Dkt. no. 31 ¶ 1. The TRO also barred the defendants "and any persons in active

concert or participation with them" from disposing of or transferring assets absent a further order by the Court. *Id.* ¶ 4. In addition, the TRO directed those in privity with the defendants and with actual knowledge of the order (including the e-commerce platforms) to: (a) cease providing services for any accounts through which the defendants engaged in selling infringing and counterfeit items, and (b) provide expedited discovery regarding the identities and locations of the defendants and any financial accounts they owned or controlled. *Id.* ¶¶ 2–3.

The present dispute concerns Shopify, which hosts the online stores of a number of the defendants. TV Tokyo provided Shopify a copy of the TRO on January 14, the day after the order was entered. Shopify says that shortly after receiving the TRO— though it does not say exactly when—it "removed specifically identified, allegedly infringing products from the named merchant stores." Shopify Inc.'s Opp. to Pl.'s Mot. to Compel at 2 ("Shopify Mem."). But it otherwise declined to comply with the Court's order. In particular, Shopify refused to provide identifying information regarding the alleged infringers operating via its platform and refused to freeze their accounts (more on that below).

TV Tokyo has moved to compel Shopify to comply with the TRO, specifically by producing the requested information, including identity and account-related information. Until TV Tokyo obtains this information, it cannot serve the TRO upon the alleged infringers because it lacks contact information for them. Shopify objects, saying that the TRO cannot be enforced against it because: (1) it was not provided with proper notice and a sufficient opportunity to be heard, (2) it cannot be bound by the TRO consistent with Federal Rule of Civil Procedure 65(d), (3) it cannot be bound by the TRO because

personal jurisdiction is lacking, (4) even if it can be bound by the TRO, it lacks control over its merchants' funds and thus is not in a position to freeze them, and (5) because it is not a party, any request for information has to be made via subpoena, properly served, which in Shopify's case means issuance and service of letters rogatory because it is located in Canada. Shopify's response to the motion also includes a good deal of rhetoric suggesting that the Court, and others like it, are acting lawlessly in enabling what Shopify appears to characterize as a "scheme" of "abusive intellectual property litigation" against online infringers and counterfeiters. Shopify Mem. at 2–3.

### Discussion

A court may grant an *ex parte* TRO only if the moving party provides "specific facts" that "clearly show . . . immediate and irreparable injury, loss, or damage will result before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). TV Tokyo's motion for an *ex parte* TRO unquestionably met that standard as to the defendants it has sued. In particular, TV Tokyo made a showing that the defendants, all likely located overseas, were selling counterfeit and otherwise infringing products via the Internet on an ongoing basis and that it was likely they would continue to do so— and keep the proceeds of their infringement from the reach of TV Tokyo and the courts—unless restrained.

But injunctions, including TROs, usually bind only the named parties. *See Nat'l Spiritual Assembly of the Baha'is of the U.S. Under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Baha'is of the U.S., Inc.*, 628 F.3d 837, 847 (7th Cir. 2010). Shopify is not a named party. Federal Rule of Civil Procedure 65(d), however, allows a TRO to bind (1) "the parties' officers, agents, servants, employees, and

attorneys" and (2) "other persons who are in active concert or participation" with the enjoined parties. Fed. R. Civ. P. 65(d)(2). A nonparty is in "active concert or participation" with an enjoined party if the nonparty "aids or abets an enjoined party in violating the injunction."[1] *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010). "Actions that aid and abet in violating the injunction must occur after the injunction is imposed . . . ." *Id.* at 568.

The Court first addresses Shopify's contention that personal jurisdiction is lacking. Specific personal jurisdiction, as Shopify argues, requires "[t]he suit [to] arise out of or relate to [its] contacts with the forum," meaning that "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (cleaned up), *cited at* Shopify Mem. at 13. In arguing that specific personal jurisdiction is lacking, Shopify seems to suggest that all it did was allow the defendants, or some of them, to "display products online that are shippable to Illinois." This, according to Shopify, is "nothing more than maintaining an interactive website that is accessible in Illinois," which, if true, would not be enough for specific personal jurisdiction. Shopify Mem. at 14. But that is not all that took place. TV Tokyo, through counsel, actually placed, with certain defendants' Shopify-based stores orders for infringing products to

---

[1] A nonparty may also be in active concert if there is privity between the nonparty and the enjoined party. *Nat'l Spiritual Assembly*, 628 F.3d at 848–50. TV Tokyo has not argued Shopify is in privity with the enjoined parties and has thus forfeited the point. *See Blockowicz*, 630 F.3d at 567 (only addressing whether a nonparty aided and abetted an enjoined party when the plaintiffs failed to "assert a privity-related argument").

be delivered to Illinois. *See* Decl. of Erin van Vonderen ¶ 4. In a footnote, Shopify cites a fourteen-year-old district court decision saying that this isn't enough and amounts to attempting to "manufacture jurisdiction." Shopify Mem. at 14 n.4. But in making that point and relying on that case, Shopify fails to acknowledge more recent, and controlling, precedent from the Seventh Circuit that holds exactly the opposite. *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624–25 (7th Cir. 2022).[2]

But although it is virtually certain that TV Tokyo *could* successfully exert jurisdiction in this District over Shopify for facilitating sales of infringing products, it has not—at least has not yet—sued Shopify. Rather, Shopify is a nonparty that TV Tokyo contends is bound by the preliminary injunction because it has notice of the TRO and has acted and is acting in concert with the defendants who operate on its platform. In this situation, TV Tokyo must show the requirements of Rule 65(d)(2) are met even if it could have named Shopify as a party in the first instance.

TV Tokyo contends that Shopify's refusal to comply with the TRO amounts to acting in concert with the defendants who operate stores on its platform. But the Seventh Circuit has held that aiding and abetting the violation of an injunction requires more than inactivity. *Blockowicz*, 630 F.3d at 568; *see also Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (noting that aiding and abetting requires "some affirmative act with the intent of facilitating the offense's commission") (cleaned up). That almost certainly would be the case here if, after having notice of the TRO, Shopify allowed the defendants to continue to use its platform to sell infringing products. But Shopify says it

---

[2] *See* N.D. Ill. LR 83.50 (adopting ABA Model Rules of Professional Conduct for non-Illinois attorneys and Illinois Rules of Professional Conduct for Illinois attorneys); Ill. R. Pro. Conduct 3.3(a)(2); Am. Bar Ass'n Model R. Pro. Conduct 3.3(a)(2).

put a stop to that once it received the TRO, and TV Tokyo does not argue otherwise.

In addressing the issue of "active concert" under Rule 65(d), *Blockowicz* is instructive. The plaintiffs in that case obtained an injunction ordering the defendants to remove defamatory comments from a website. *Blockowicz*, 630 F.3d at 564. When the defendants failed to do so, the plaintiffs notified the website's owner and manager of the injunction and asked them to remove the defamatory comments. *Id.* After they refused, the plaintiffs argued that the injunction should be enforceable against them as well, contending their refusal meant they were in active concert with the defendants. The Seventh Circuit disagreed. Without evidence that the owner or manager "took any action to aid or abet the defendants in violating the injunction," they were not in active concert with the defendants, as "mere inactivity is simply inadequate to render them aiders and abettors in violating the injunction." *Id.* at 568.

In this case, Shopify's refusal to abide by the injunction—aside from removing the offending listing(s)—amounts to simple inaction, at least for the most part. In particular, Shopify's refusal to provide information about the defendants falls into this category. On the present record at least, that refusal is not enough to make Shopify an aider and abettor: there is no contention that Shopify has done or is doing anything that actively assists any defendant in concealing its identity from TV Tokyo.

TV Tokyo disagrees that only inaction is involved here. Specifically, it notes that Shopify *has* acted by taking down the listings it believes were infringing. This selective compliance with the TRO, according to TV Tokyo, amounts to aiding and abetting. But although Shopify's removal of certain listings is undeniably "action," TV Tokyo has not shown how this action aids or abets *violations* of the injunction. If anything, the

6

voluntary removal of listings Shopify determined were infringing only impedes the alleged counterfeiters' ability to ignore the TRO, as it prevents them from continuing to infringe on TV Tokyo's intellectual property rights. Shopify's refusal to do anything more than this amounts to inaction that cannot be considered aiding and abetting.

It is also quite likely that Shopify would be found to have aided and abetted if, after notice of the TRO, it enabled a defendant to withdraw or transfer from an account funds from trademark-infringing sales. The TRO barred the defendants from making such withdrawals or transfers. So if Shopify enabled—or perhaps even allowed—a defendant to do so, that could constitute acting in concert for purposes of Rule 65(d). *See, e.g.*, *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996) (discussed in *Blockowicz*, 630 F.3d at 569).

On this, matters are a bit murkier. Shopify seems to say that it is not involved with processing its merchants' payments. More specifically, Shopify states:

> 5.      Shopify does not control or direct funds for merchants on its platform. Instead, Shopify relies on third-party payment processors such as Stripe, Inc. and PayPal, Inc. to control and direct merchant funds.
>
> 6.      Because Shopify does not control or direct merchant funds, requests to restrain merchants from transferring or disposing of any funds or to freeze merchant assets should be directed to the payment processors.

Van Vonderen Decl. ¶¶ 5–6. On the other hand, TV Tokyo cites Shopify's terms of service, which state, in relevant part:

> Shopify provides a complete commerce platform that enables merchants to unify their commerce activities. Among other features, this platform includes a range of tools for merchants to build and customize online stores, sell in multiple places (including web, mobile, social media, online marketplaces and other online locations ("Online Services") and in person ("POS Services")), ***manage*** products, inventory, ***payments***, fulfillment, shipping, business operations, marketing and advertising, and engage

with existing and potential customers.

Pl.'s Reply in Support of Mot. to Compel, Ex. A at 2 (emphasis added).

To summarize, Shopify's terms of service say that its platform enables a merchant to "manage" payments, and the declaration it provided says it does not "control" or "direct" merchant funds. The proposition that Shopify's platform permits "managing" payments may be read to suggest that funds pass through Shopify's hands, even if it does not "control" or "direct" where they end up. In short, the affidavit provided by Shopify does not sufficiently clear things up.

The Court asked about this point at a brief oral hearing on the motion to compel, held on March 4, 2025. Shopify's counsel stated at the hearing that when a customer wants to purchase an item from a merchant on Shopify's platform, the customer is redirected to a third-party site, such as PayPal or Stripe, to make payment. That's consistent with Shopify's contentions here as far as it goes, but the Court—frankly due to its relative unfamiliarity with the technology—did not ask enough questions. There is more the Court needs to know bearing on the issue of whether Shopify, at some relevant point, has control over or contact with a merchant's funds or funds being paid to a merchant in connection with a sale. These include: Does a Shopify merchant have an account of any sort with Shopify? If so, what is the nature of the account, what goes in and out of it, and under what circumstances? Do any funds relating to a purchase, at any point in time, pass through Shopify's hands? What control, if any, does Shopify have over its merchants' choice regarding what third-party payment processor is used? Does Shopify charge and receive fees on sales by merchants on its platform? How are these fees determined, collected, and paid?

8

Each side is directed to make a supplemental submission, by March 26, 2025, addressing these points (including by affidavit if appropriate) and providing as much detail as possible regarding the flow of funds relating to merchants using Shopify's platform. A further telephonic status hearing is set for April 2, 2025 at 9:05 a.m., using call-in number 650-479-3207, access code 2305-915-8729. With respect to the temporary restraining order issued against the defendants using the Shopify platform—which TV Tokyo, as yet, has been unable to serve upon them due to Shopify's refusal to provide contact information—the order, extended orally at the March 4, 2025 hearing, is hereby extended through April 2, 2025.

Date: March 19, 2025

_____
MATTHEW F. KENNELLY
United States District Judge